IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| WISTHLE INVESTMENT GROUP, LLC,<br>a Florida limited liability company,<br><br>  Plaintiff,<br><br>v.<br><br>CR HANCOCK BRIDGE, LLC,<br>a foreign limited liability company, and<br>HYPO REAL ESTATE CAPITAL CORPORATION,<br>a foreign corporation,<br><br>  Defendants. | Civil Action No. 2:08-cv-281-FtM<br><br>Judge Thomas A. Wiseman, Jr. |

## MEMORANDUM OPINION

Presently before the Court, among other pending motions, is the Motion for Summary Judgment (Doc. No. 60) filed by defendant Hypo Real Estate Capital Corporation ("Hypo") in which this defendant asserts that, on the undisputed facts, it is entitled to judgment in its favor as a matter of law pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed herein, the Court agrees and will therefore grant the motion, thereby rendering moot the other pending motions filed by Hypo, including its Motion to Dismiss and Amended Motion to Dismiss (Doc. Nos. 37 and 56) and Emergency Motion for Protective Order (Doc. No. 66).

## I. STANDARD OF REVIEW

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

> The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *Twiss v. Kury*, 25 F.3d 1551, 1554 (11th Cir. 1994). The moving party has the burden of meeting this exacting standard. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970), *superseded on other grounds by Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "An issue of fact is 'material' if it is a legal element of the claim under the

applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citations omitted). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* However, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## II. UNDISPUTED FACTS RELATED TO DEFENDANT HYPO

This matter arises out of an agreement for the purchase of real estate ("Purchase Agreement") dated December 19, 2005 by and between plaintiff Wisthle Investment Group, LLC ("Wisthle") and defendant CR Hancock Bridge, LLC ("CR Hancock"). Pursuant to the terms of the Purchase Agreement, Wisthle agreed to buy and CR Hancock agreed to sell a condominium unit ("Unit") to be constructed within the North Star Yacht Club Condominium development (the "Condominium Development") in North Fort Myers, Lee County, Florida. Wisthle filed this action against CR Hancock on April 3, 2008 seeking rescission of the Purchase Agreement and other relief based on a number of different legal theories. On August 5, 2008, Wisthle filed a First Amended Complaint joining Hypo as an additional defendant to all the claims previously raised against CR Hancock in the original Complaint.

In support of its claims against Hypo, Wisthle asserts in the First Amended Complaint that Hypo provided financing to CR Hancock for the construction of the Condominium Development and that, after CR Hancock defaulted on its obligations under the construction loan agreements,

> Lender [Hypo] has assumed control of the North Star Yacht Club development. Additionally, Lender [Hypo] has acted beyond the role of construction loan mortgagee and has become an active participant with CR Hancock with regard to the North Star Yacht Club development. As a result of the aforementioned, the separate identities of CR Hancock and Lender have been extinguished and the identities merged into one for purposes of this action and/or Lender is liable for Plaintiff's claims against CR Hancock.

2

(Doc. No. 32, at ¶ 4.)  Wisthle did not allege any other facts in support of its assertion that Hypo assumed responsibility for CR Hancock's obligations, included its potential liability to Wisthle.

The facts developed through discovery confirm that Hypo, as lender, provided financing to CR Hancock for the construction of the Condominium Development, and that CR Hancock failed to fulfill its obligations under the construction loan agreements between Hypo and CR Hancock.  Consequently, on May 21, 2008, Hypo assumed control of the Condominium Development.  Hypo relinquished all such control as of October 14, 2008, when it sold its judgment against CR Hancock to Liffey NSYC, LLC, a Delaware limited liability company.  At no time was Hypo involved in the actual construction of the Unit purchased by Wisthle.  In fact, a Certificate of Occupancy was issued for the building containing the Unit purchased by the plaintiff on November 2, 2007, indicating completion of construction well before Hypo assumed control over any of CR Hancock's operations.  Moreover, at no time prior to May 21, 2008 was Hypo involved in the marketing, advertising or sales of any of the condominium units in the Condominium Development.

### III.     ANALYSIS AND DISCUSSION

Hypo has now filed its motion for summary judgment, asserting that it is entitled to judgment in its favor based on the general rule that "the mere loan of money by one corporation to another does not automatically make the lender liable for the acts and omissions of the borrower." (Doc. No. 60, at 3 (quoting *Krivo Indus. Supply Co. v. Nat'l Distillers & Chem. Corp.*, 483 F.2d 1098, 1104 (5th Cir. 1973)).  Rather, "courts require a strong showing that the creditor assumed actual, participatory, total control of the debtor."  *Krivo Indus. Supply*, 483 F.2d at 1105.  Hypo argues that it did not exercise the requisite degree of control over CR Hancock to warrant making it liable for CR Hancock's obligations.  Further, Hypo points out that it did not exercise any control over CR Hancock until well after the completion of all actions by CR Hancock upon which Wisthle's claims are based, such that, whatever degree of control might have been exercised, Hypo did not participate in CR Hancock's alleged wrongdoing.

Wisthle has filed its response in opposition to Hypo's motion arguing only that there are genuine issues of material fact regarding the degree of control exercised by Hypo after the developer's default, and that further discovery is needed in order to clarify how much control Hypo exercised over the Condominium Development.  Like Hypo, Wisthle relies upon *Krivo Industrial Supply Co.*, but in support of

the proposition that, "[i]f a lender becomes so involved with its debtor that it is in fact actively managing the debtor's affairs, then the quantum of control necessary to support liability . . . may be achieved." (Doc. No. 62, at 2 (quoting *Krivo Indus. Supply*, 483 F.2d at 1104).)

This Court likewise finds that *Krivo*, though it applied Alabama substantive law, is instructive here. In that case, ten creditors of a reorganized corporate debtor brought suit against the debtor's major creditor on the ground that the defendant creditor had dominated the debtor corporation to such an extent that the debtor became a "mere instrumentality" of the defendant. The district court issued a directed verdict in favor of the defendant, which the Fifth Circuit affirmed on appeal. In reaching its conclusion, the court discussed in some depth the "instrumentality" doctrine, noting that this doctrine was in derogation of the basic conception of the corporation as an entity with a legal existence separate and distinct from that of its owners. *Id.* at 1102. The separation, of course, is not absolute and, although corporate form "is not lightly disregarded," courts will not hesitate to do so "in those cases where the corporate device has been misused by its owners." *Id.* The court further noted that "[o]ne of the most difficult applications of the rule permitting the corporate form to be disregarded arises when one corporation is sought to be held liable for the debts of another corporation." *Id.* One of two ways in which one corporation may become liable for the obligations of another is when the first corporation

> misuses that [second] corporation by treating it, and by using it, as a mere business conduit for the purposes of the dominant corporation. The rationale for holding the dominant corporation liable for the subservient corporation's debts is that, since the dominant corporation has misused the subservient corporation's corporate form by using it for the dominant corporation's own purposes, the debts of the subservient corporation are in reality the obligations of the dominant corporation. In these cases, the courts will look through the forms to the realities of the relation between the companies as if the corporate agency did not exist and will deal with them as the justice of the case may require.

*Id.* at 1102–03 (internal quotation marks and citations omitted). The court then formulated a two-part test for determining whether a "dominant" corporation should be held liable for the "subservient" corporation's obligations: "First, the dominant corporation must have controlled the subservient corporation, and second, the dominant corporation *must have proximately caused plaintiff harm through misuse of this control*." *Id.* at 1103 (citations omitted; emphasis added).

Most of the cases following *Krivo Industrial* have, like the plaintiff here, focused on the first part of the test regarding control of the dominant over the subservient corporation, but the Florida Supreme

4

Court has confirmed that application of the "instrumentality" test or "piercing the corporate veil" also requires a showing of improper conduct—that is, a misuse of whatever control was exercised by the dominant corporation over the subservient one. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984). Moreover, Florida courts also recognize a "firmly established" "general rule that the allegedly improper transaction may be relied upon only when it has *caused cognizable damage* to the creditors[.]" *Braswell v. Ryan Invs., Ltd.*, 989 So.2d 38, 40 (Fla. 3d Dist. Ct. App. 2008) (emphasis added) (citing *Gasparini v. Pordomingo*, 972 So.2d 1053, 1055 (Fla. 3d Dist. Ct. App. 2008); *Priskie v. Missry*, 958 So.2d 613, 614–15 (Fla. 4th Dist. Ct. App. 2007); *Seminole Boatyard, Inc. v. Christoph*, 715 So.2d 987, 990 (Fla. 4th Dist. Ct. App. 1998), *review denied*, 727 So.2d 903 (Fla. 1998)).

In this case, although there is perhaps some dispute as to the degree of control exercised by Hypo over CR Hancock from May 21, 2008 through October 14, 2008, the record is completely devoid of any evidence that Hypo misused that control, or that the plaintiff's alleged injuries are causally connected to any misuse by Hypo of its control over CR Hancock and the Development. As Hypo points out, the actions taken by CR Hancock that form the basis for the plaintiff's causes of action all occurred well before Hypo assumed control of CR Hancock's operations. In fact, plaintiff filed suit before Hypo asserted control over CR Hancock based upon CR Hancock's default of its obligations to Hypo. Because there is no evidence of either misuse or causation, Hypo is entitled to judgment in its favor regardless of the degree of control it exercised over CR Hancock after CR Hancock defaulted on its loan obligations.

**IV. CONCLUSION**

As set forth above, the Court finds that the relevant facts are undisputed and that defendant Hypo is entitled to judgment in its favor as a matter of law. Hypo's motion for summary judgment will therefore be granted and the claims against it dismissed.

An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge
Sitting by Designation in the
Middle District of Florida